WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Didyoung and Donna Didyoung, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Allstate Insurance Company, a stock company and a foreign corporation and subsidiary of Allstate Property and Casualty Insurance Company,<br><br>Defendant. | No. CV-12-348-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Allstate Insurance Company's Motion for Summary Judgment. (Doc. 33.) For the reasons discussed below, Allstate's Motion is granted.[1]

**BACKGROUND**

Plaintiffs Joseph and Donna Didyoung owned a mobile home in Pinetop, Navajo County, Arizona. (Doc. 1-1 at ¶ 2.) The mobile home was insured through a policy written by Allstate. (*Id.* at ¶ 5.) The policy provided that covered property losses would be settled on an "actual cash value" basis. (Doc. 34-1 at JM00512.)

The Didyoungs' mobile home was built with a twenty-pound roof load capacity.

---

[1] Allstate's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  (Doc. 35 at 3.) In January 2010, record snowfalls caused the roof of the mobile home to collapse, allegedly "compromising the integrity of the entire structure." (Doc. 1-1 at ¶ 6.) After these record snowfalls, Navajo County changed its building code to require a forty-pound roof load capacity on mobile homes. (Doc. 35 at 3.)

The Didyoungs timely reported the claim to Allstate. (Doc. 1-1 at ¶ 7.) Allstate hired an independent adjuster who estimated that the actual cash value of the Didyoungs' property at the time of the loss was $28,858.61. (Doc. 34 at ¶ 2.) The Didyoungs hired their own public adjuster who prepared an actual cash value estimate of $118,721.92. (Doc. 35 at 3.) This estimate was based on "what it would actually cost to replace the property less depreciation" and included "all necessary work required to put the home in a pre-loss condition subject to Navajo County's building requirements." (*Id.*) The Didyoungs thus submitted a proof of loss for $140,239.47 as "the Actual Cash Value for the cost of repair . . . to put [their] property in a pre-loss condition."[2] (Doc. 36 at ¶¶ 8–9.) Allstate denied coverage for the cost of building code upgrades. (Doc. 34 at ¶ 2.) The Didyoungs allegedly refused to accept payment from Allstate in the lower amount estimated by Allstate's adjuster. (Doc. 1-1 at ¶ 9.) This led Allstate to re-issue the checks to the Didyoungs' mortgage company. (*Id.*)

The Didyoungs brought suit against Allstate in Pinal County Superior Court on January 11, 2012. (Doc. 1-1 at 1.) They asserted claims for breach of contract and insurance bad faith, alleging that Allstate intentionally low-balled the initial estimate of actual cash value. (*Id.* at ¶ 8.) They further alleged that Allstate's actions forced the Didyoungs to fall behind on their mortgage payments, causing the mobile home to go into foreclosure. (*Id.* at ¶ 10.) The Didyoungs sought compensatory damages, damages for emotional distress, and punitive damages. (*Id.* at 4.) On February 17, 2012, Allstate removed the action to this Court. (Doc. 1.)

---

[2] The Didyoungs do not explain the difference between the dollar amount reached by their public adjuster and the amount they submitted to Allstate in their proof of loss. Further, the evidence to which the Didyoungs cite for their proof of loss was not attached to their Response to Allstate's Motion for Summary Judgment.

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material. *Anderson*, 477 U.S. at 248. Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also* LRCiv. 1.10(l)(1) ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the

entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

**II.   Analysis**

    **A.   Breach of Contract Claim**

The Didyoungs and Allstate disagree on the meaning of the term "actual cash value" as set forth in the insurance policy. The policy states that:

> A covered property loss will be settled on an actual cash value basis.
>
> In making an actual cash value settlement, payment will not exceed the smallest of the following amounts:
> a)   The actual cash value at the time of the loss
> b)   The amount necessary to repair or replace the damaged property; or
> c)   The limit of liability applying to the property.

(Doc. 34-1 at JM00512.) Allstate contends that "actual cash value" does not include "the cost of upgrades necessary to comply with current building codes and obtain a repair permit." (Doc. 33 at 5.) The Didyoungs, conversely, argue that they are entitled to the cost of repairing their mobile home to comply with current building codes. (Doc. 35 at 5.)

"The interpretation of an insurance contract generally is a question of law for the court." *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 244, 256 P.3d 635, 641 (Ct. App. 2011), review denied (Oct. 25, 2011). The provisions of an insurance contract are to be construed "according to their plain and ordinary meaning." *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982).

Arizona courts have not addressed the issue of how to define "actual cash value" when it is not defined by the insurance contract. The primary Arizona case discussed by the parties, *Tritschler*, involved the Court of Appeals interpreting the policy's definition of "actual cash value" as "the current cost to repair or replace covered property with new material of like kind and quality less a deduction for physical deterioration and

depreciation, including obsolescence." *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 510, 144 P.3d 519, 524 (Ct. App. 2006). Here, however, the insurance contract between Allstate and the Didyoungs includes no express definition of "actual cash value."

When no Arizona court has previously addressed an issue of insurance contract interpretation, Arizona courts "look for guidance to other jurisdictions that have addressed [the] issue." *Tritschler*, 144 P.3d at 525. A survey of the courts that have addressed the issue of an undefined "actual cash value" term reveals some disagreement. *See, e.g.*, *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) ("Under Texas law, the term 'actual cash value' is synonymous with 'fair market value.'"); *Kane v. State Farm Fire & Cas. Co.*, 2003 PA Super 502, 841 A.2d 1038, 1047 (Pa. Super. Ct. 2003) (defining "actual cash value" in the absence of "qualifying language" as "the cost to repair or replace the damaged property"); *Cheeks v. Cal. Fair Plan Assn.*, 61 Cal. App. 4th 423, 426, 71 Cal. Rptr. 2d 568, 570 (1998) (holding that "actual cash value" means "'fair market value' not replacement cost less depreciation"). However, no case thus far has interpreted "actual cash value" in the manner offered by the Didyoungs as encompassing the cost of repairing the property to comply with building codes that did not exist until after the loss occurred.

The Didyoungs rely heavily on the language in *Tritschler* which held that "actual cash value" in the case at hand included "any cost that an insured would be reasonably likely to incur in repairing or replacing a covered loss, regardless of whether the insured intends to repair or replace the property." 144 P.3d at 529. As discussed above, *Tritschler* is inapposite because the court in that case was interpreting a definition of "actual cash value" as set out in the insurance contract, and here the insurance contract lacks a definition. Moreover, the definition reached by the court in *Tritschler* did not expressly include the cost of upgrading damaged property to comply with new building codes. Thus, *Tritschler* does not support the Didyoungs' position.

The Didyoungs also argue that the portion of the insurance contract excluding loss or damage resulting from "[e]nforcement of any ordinance or law regulating the

- 5 -

construction, repair or demolition of a mobile home or other structure" does not apply to this situation. (Doc. 35 at 5; *see also* Doc. 34-1 at JM00506.) The Didyoungs point to *Dupre*, a Colorado case in which the court held that an identical exclusion provision did not exclude coverage for required building code upgrades. *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1029–30 (Colo. Ct. App. 2002). The court interpreted the provision as excluding only physical loss *caused by* building code requirements, rather than physical loss caused by other factors that requires additional work to bring the repaired property up to code. *Id.* Thus, the court found that the policy covered the cost of upgrading the damaged property to comply with building codes. *Id.* at 1032. However, the plaintiff in *Dupre* had a replacement cost policy instead of an actual cost policy. *Id.* at 1030. In that opinion, the court carefully specified that "while an actual cost policy is designed to avoid placing the insured in a better position than he or she was in before the fire, a replacement cost policy allows for such a possibility because it is intended to allow the insured to replace the damaged building." *Id.* The Didyoungs in this case have an actual cost policy, not a replacement policy. (*See* Doc. 34-1 at JM00512 ("A covered property loss will be settled on an actual cash value basis.").) Requiring Allstate to pay for the cost of upgrading their mobile home to comply with new building codes would place the Didyoungs in a better position than they were in before the snowfall. In any event, even if this particular exclusion provision did not apply to this case because the Didyoungs' loss was not caused by building code requirements, it would not mean that the policy covers building code upgrades; it would only mean that the particular provision does not operate to *exclude* building code upgrades.

      The "plain and ordinary meaning" of the phrase "actual cash value" does not, in this Court's view, include the cost of repairs to upgrade damaged property to comply with building codes that were not in place at the time that the property was damaged. The insurance contract specifies that actual cash value is to be calculated "at the time of the loss." No plain reading of this provision would stretch it to encompass the cost of repairing the property to a better condition than it was in at the time of the loss. Had the

loss not occurred, the Didyoungs would have had to pay for the upgrade to bring their mobile home up to code themselves. Moreover, no court has interpreted "actual cash value" in the way asserted by the Didyoungs. As such, the Court finds as a matter of law that the insurance contract between Allstate and the Didyoungs does not cover the cost of upgrading the property to comply with Navajo County's building requirements. As such, Allstate did not breach the insurance contract in refusing to pay for such upgrades. Allstate's Motion for Summary Judgment is granted on the breach of contract claim.

### B.      Insurance Bad Faith Claim

The Didyoungs further assert that Allstate acted unreasonably in processing their claim and thus it should be held liable for bad faith. (Doc. 35 at 7.) Under Arizona law, "an insurer that intentionally and unreasonably denies or delays payment breaches the covenant of good faith owed to its insured." *Rawlings v. Apodaca*, 151 Ariz. 149, 156, 726 P.2d 565, 572 (1986). A breach of an express covenant of the insurance contract is not a necessary prerequisite to this claim. *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 505, 838 P.2d 1265, 1266 (1992).

When the issue is a dispute over coverage, as the case here, "an insurance company breaches its duty of good faith and fair dealing if it 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242, 256 P.3d 635, 639 (Ct. App. 2011), review denied (Oct. 25, 2011) (citing *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000)). The elements of the claim are: (1) "the insurer lacked an objectively reasonable basis for denying the claim" and (2) it "knew or was conscious of the fact that it was acting unreasonably in denying the claim." *Id.* at 642.

"A failure to pay a claim is unreasonable unless the claim's validity is 'fairly debatable' after an adequate investigation." *Rawlings*, 726 P.2d at 572. Fair debatability is a "necessary condition to avoid a claim of bad faith." *Lennar*, 256 P.3d at 642 (quoting *Zilisch*, 995 P.2d at 280). The inquiry turns on "whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and

processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* (quoting *Zilisch*, 995 P.2d at 280).

Allstate contends that it acted reasonably in denying the Didyoungs coverage for the cost of upgrades because the insurance contract "only provides coverage for the 'actual cash value' of the property 'at the time of the loss.'" (Doc. 33 at 10 (citing Doc. 34-1 at JM00512).) It further points to evidence that the Didyoungs' expert agreed that, in calculating actual cash value, the property's pre-loss condition, including the fact that it was not up to date with the most recent building codes, must be taken into account. (Doc. 34-2 at 90:1–20.) Thus, Allstate has set forth evidence that no question of fact exists as to its reasonableness in interpreting the coverage to exclude the cost of upgrading the mobile home to comply with new building codes. The burden falls on the Didyoungs to point to a genuine issue of material fact to preclude summary judgment.

The Didyoungs contend that Allstate acted unreasonably in denying coverage for the cost of the repair plus upgrades because Allstate was aware of "prior judicial determinations that Allstate is responsible for all costs of rebuilding including upgrades." (Doc. 35 at 8.) The only "prior judicial determination" cited by the Didyoungs is *Dupre*. As discussed above, *Dupre* is not on point because it dealt with a replacement cost policy rather than an actual cost policy like the one the Didyoungs had. 62 P.3d at 1030.

The Didyoungs also point to testimony from Ron Gates, the chief building inspector for Navajo County, as evidence that Allstate acted unreasonably. (Doc. 35 at 8.) The Didyoungs contend that Gates' testimony shows that the roof collapse represented "a significant if not complete loss." (*Id.*) Gates testified that the majority of snow-damaged homes in the Didyoungs' neighborhood were simply replaced, rather than repaired. (Doc. 35-2 at 64:18–65:6.) This testimony does not create a material issue of fact that Allstate acted unreasonably in denying coverage for the cost of building code upgrades. The insurance contract limited the Didyoungs' recovery to the least of actual cash value, the cost of repair or replacement, or the limit of liability. (Doc. 34-1 at JM00512.) The fact that other snow-damaged homes were replaced does not show that Allstate acted

unreasonably by failing to pay for the cost of repairing the Didyoungs' mobile home to a condition mandated by new building code requirements. There is no evidence that the other damaged homes were insured under policies similar to the one owned by the Didyoungs, and even if there was, this evidence would not necessarily be material in demonstrating Allstate's unreasonableness, given that the other homes may have had different actual cash values, repair or replacement costs, or limits of liability. Gates' testimony does not raise a material issue of fact as to the unreasonableness of Allstate's behavior.

Finally, the Didyoungs cite the testimony of Paul Lewton, the independent adjuster hired by Allstate to assess the Didyoungs' damage. (Doc. 35 at 9.) The Didyoungs quote testimony in which Lewton agreed that in repairing a mobile home, an owner would have to do so in accordance with applicable local and state law. (*Id.*) However, they fail to attach the portion of his deposition transcript that contains this testimony, and as such, it does not constitute evidence that could create a material issue of fact.[3] *See Carmen*, 237 F.3d at 1028–29. The Didyoungs further point to Lewton's testimony that he simply provided a "bricks and mortar rebuild estimate" and that if the estimate would not allow the insured to meet applicable building codes, it was "Allstate's issue to deal with." (Doc. 35-1 at 38:20–25.) Lewton's concession of these points does not establish a material issue of genuine fact as to Allstate's unreasonableness. Allstate demonstrated that it was reasonable for it to deny coverage for the cost of upgrading based on its interpretation of "actual cash value." Lewton's testimony that it was not his job to estimate the cost of repairing to comply with current building code requirements does not contradict this showing. Thus, the Didyoungs have not raised a material issue of

---

[3] The Court notes that even if this testimony were attached, it is unlikely to create a material issue of genuine fact precluding summary judgment. Under the insurance contract, Allstate was only required to pay the lesser of three values, one of which was the cost of repair. (Doc. 34-1 at JM00512.) Allstate apparently chose to pay the less costly actual cash value over the cost of repair, as it was allowed to do so under the contract. Thus, Lewton's testimony that homeowners have to repair their homes in accordance with applicable law does not create an issue of fact that Allstate acted unreasonably.

genuine fact on this ground.

The Didyoungs have failed to overcome Allstate's showing that its denial of coverage based on an interpretation of the insurance contract as excluding building code upgrades was reasonable as a matter of law. As such, Allstate's Motion for Summary Judgment on the Didyoungs' insurance bad faith claim is granted.

### C.     Causing Mortgage Foreclosure

The Didyoungs allege in their Complaint that Allstate's underpayment of their claim caused their mobile home to go into foreclosure. (Doc. 1-1 at ¶ 10.) They allege that Allstate's refusal to repair the property made it uninhabitable and that the financial stress they suffered as a result caused them to fall behind on their mortgage payments. (*Id.*) They do not specify what theory of wrongdoing they rely upon in seeking damages against Allstate for allegedly causing foreclosure.

Allstate asserts that it is entitled to summary judgment no matter the theory on which the Didyoungs rely. Allstate points to evidence that the Didyoungs began missing mortgage payments before there was any dispute with Allstate over the extent of coverage. Joseph Didyoung testified that he was simultaneously making mortgage payments on the mobile home in Pinetop while leasing a home in Prescott before the time of the loss, and that he could not afford making payments on both properties. (Doc. 34-11, 140:9–15.) He further testified that the first missed mortgage payment occurred before any dispute arose with Allstate. (*Id.* at 149:22–150:23.)  Allstate has thus set forth evidence that the Didyoungs' ultimate foreclosure was caused by factors other than Allstate's actions.

In their Response, the Didyoungs state only that "[w]hether Allstate's actions did or did not result in the foreclosure are issues of fact the jury may consider in the damage phase of the trial." (Doc. 35 at 13–14.) They cite to no evidence in making this statement. The Didyoungs have thus failed to muster any facts that would contradict Allstate's showing that it did not cause the foreclosure of their mobile home. Allstate's Motion for Summary Judgment on any claims the Didyoungs may have against Allstate for causing

the foreclosure is granted.

### D.     Punitive Damages

Allstate asserts that it is entitled to summary judgment on the Didyoungs' request for punitive damages because they have failed to set forth any evidence that Allstate acted with an "evil mind." (Doc. 33 at 11.) In light of the conclusions reached above granting summary judgment on all of the Didyoungs' claims, there appears to be no basis on which the Didyoungs may recover punitive damages. Allstate's Motion for Summary Judgment on punitive damages is therefore granted.

## CONCLUSION

The Didyoungs have failed to establish as a matter of law that their insurance policy covered the cost of repairing their mobile home to a condition better than its pre-loss state, i.e., a condition that would comply with Navajo County's new roof capacity building code requirements. As such, Allstate's Motion for Summary Judgment is granted on their breach of contract claim. The Didyoungs have also failed to raise any material issue of fact that Allstate acted unreasonably in denying their claim or that Allstate caused their mobile home to foreclose. Allstate's Motion for Summary Judgment is therefore granted on those claims, as well. Because summary judgment has been granted on all the Didyoungs' claims against Allstate, there is no basis on which the Didyoungs may recover punitive damages, and Allstate's Motion is also granted on that issue.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS THEREFORE ORDERED** that Defendant Allstate Insurance Company's Motion for Summary Judgment (Doc. 33) is **GRANTED**.  The Clerk of Court is directed to terminate this matter.

Dated this 13th day of June, 2013.

*A. Murray Snow*

G. Murray Snow
United States District Judge